IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD BRILEY,** | : | Civil No. 1:20-CV-756 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **PATRICIA HOWELL, et al.,** | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.   Factual Background

This is a *pro se* prisoner lawsuit brought against numerous employees at the Pennsylvania Department of Corrections ("DOC") for civil rights violations under 42 U.S.C. § 1983. A recurring theme in this litigation is the failure of the plaintiff to comply with court-ordered deadlines, inaction which has previously compelled dismissal of other defendants from this lawsuit. Indeed, this is the second time that Briley has failed to respond to a court-ordered deadline directing him to respond to a motion to dismiss.

Ronald Briley, a state inmate incarcerated at the State Correctional Institution at Mahanoy (SCI-Mahanoy), initially brought this case on May 8, 2020, alleging constitutional torts related to an incident beginning on May 5, 2018, in which Briley was injured in the exercise/recreational yard and sustained injuries. (Doc. 1, ¶ 11). Briley was sent to the medical department for treatment of his injuries where he

1

received preliminary treatment and was advised that he needed to see a doctor. (Id.) The following day, he was seen by one of the Defendants, Dr. Pandya, who scheduled an x-ray, which showed that he did not have any broken bones. (Id., ¶¶ 12-13). Over the next several months, Briley continued to seek medical help and alleges that due to the nature of his injuries, he should have been given an MRI, but that the medical staff declined, perhaps in part because of the cost associated with MRIs, and that his injuries worsened as a result of this supposedly improper medical treatment. (Id., ¶¶ 14-17). Briley also filed a grievance within the four days after sustaining his injuries, claiming that an MRI should have been scheduled right away. (Id., ¶ 21). The grievance and subsequent appeals were denied after staff determined that an MRI was not medically necessary at that time. (Id.)

On August 6, 2020, a motion to dismiss was filed on behalf of the correctional defendants, Defendants Howell, Steinhart, and Minarchick. (Doc. 15). On August 21, 2020, Briley filed a motion seeking an extension of time in which to respond to this motion to dismiss. (Doc. 17). We granted this request, ordered Briley to respond to this motion by October 2, 2020, and advised him that a failure to comply with this direction may result in the motion being deemed unopposed and granted. (Doc. 18). Briley never responded to this motion to dismiss, and the response deadline passed without any further effort to comply with our prior order or further litigate this case. Accordingly, in the absence of any response by Briley, we deemed the motion to

dismiss as to the three DOC Defendants to be ripe for resolution and recommended that the motion be granted. (Doc. 20). The district court adopted this Report and Recommendation and the claims against these three defendants have been dismissed. (Doc. 21).

The parties then consented to magistrate judge jurisdiction (Doc. 32), and on January 15, 2021, three of the remaining medical defendants, Dr. Rodgers, Mr. Miller, and Correct Care Solutions, filed a motion to dismiss or for partial summary judgment. (Doc. 34). When Briley failed to timely respond to this motion, we entered an order on February 2, 2021, directing him to respond by February 16, 2021 and warning him that a failure to respond could result in the dismissal of his claims. (Doc. 38). On February 16, 2021, Briley requested an extension of time in which to respond, which we granted, extending the response deadline to March 18, 2021.

This deadline has now also passed without any action by Briley to respond to this defense motion. In the absence of a response, the motion is now deemed ripe and will be granted.

II. **Discussion**

   A. **Under the Rules of This Court, This Motion Should Be Deemed Unopposed and Granted.**

At the outset, under the Local Rules of this Court, the plaintiff should be deemed to concur in this motion to dismiss since the plaintiff has failed to timely oppose the motion or otherwise litigate this case. As we have stated before, these

procedural defaults completely frustrate and impede efforts to resolve this case in a timely and fair fashion, and under the rules of this court warrant dismissal of this lawsuit since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' " Williams v. Lebanon Farms Disposal, Inc., Civ. No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug. 26, 2010) (quoting Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)). In this case, the plaintiff has not complied with the local rules or this Court's Standing Practice Order by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. See Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion . . . ."

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D. Pa. 2010) (quoting McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir. 1998)).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.' " Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this motion to dismiss. This failure now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

## B. <u>Dismissal of this Case Is Warranted Under Rule 41.</u>

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002) (citations omitted). That discretion, while broad, is governed by certain factors, commonly referred to as <u>Poulis</u> factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

<u>Emerson</u>, 296 F.3d at 190 (quoting <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir. 1984)).

In exercising this discretion, "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." <u>Lopez v. Cousins</u>, 435 F. App'x 113, 116 (3d Cir. 2011) (quoting

6

Briscoe v. Klaus, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case." Briscoe v. Klaus, 538 F.3d at 263 (quoting Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)). Consistent with this view, it is well settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, 296 F.3d 184; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders and has otherwise neglected to litigate this case.

Similarly, the second Poulis factor, the prejudice to the adversary caused by the failure to abide by court orders, also calls for dismissal of this action. Indeed, this factor is entitled to great weight and careful consideration. As the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir. 1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir. 1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case, the plaintiff's failure to respond to the motion to dismiss or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendant is plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio, 256 F. App'x 509 (failure to timely serve pleadings compels dismissal); Reshard, 256 F. App'x 506 (failure to comply with discovery compels dismissal); Azubuko, 243 F. App'x 728 (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor, the history of dilatoriness on the plaintiff's part, it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that " '[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' " Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted) (quoting Adams, 29 F.3d at 874). Here, the plaintiff has failed to timely file a response to the motion to dismiss and has not complied with an order of the court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor, whether the conduct of the party or the attorney was willful or in bad faith, also cuts against the plaintiff in this case. In this setting, we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams, 29 F.3d at 875. At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe, 538 F.3d at 262-63; Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under Poulis, we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.'

Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, it appears that a number of Briley's remaining claims fail as a matter of law, yet another factor which favors dismissal of this lawsuit. Accordingly, for the reasons set forth below, we will recommend that this complaint be dismissed.

### C. **Briley's Claims Against These Defendants Fail on Their Merits**

Finally, a merits analysis of Briley's complaint reveals that many of the claims made by Briley may fail as a matter of law. With respect to three of the remaining medical defendants, Dr. Rodgers, Mr. Miller, and Correct Care Solutions, this case presents an extraordinary circumstance. The plaintiff has brought constitutional tort claims against these defendants. However, it appears that the plaintiff has indulged in a profound procedural failure, a failure to exhaust administrative remedies within the prison system before filing this complaint. Having been cited by the defendants for this profound procedural shortcoming, the plaintiff has compounded this error by failing to respond to the motion to dismiss. Thus, a plaintiff who is alleged to have ignored one set of important procedural rules, has now discounted a second set of procedural benchmarks.

In particular, these defendants allege that Briley never named them in any grievances he submitted relating to his medical care. In this case, the alleged failure

fully and properly exhaust these administrative remedies may have substantive significance for the plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide range of inmate complaints, including damages complaints like those made here grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the Court of Appeals has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money

> damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate-plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill, 372 F.3d 218. Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or

timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth, 206 F.3d 289; Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, applying this procedural default component to the exhaustion requirement, Spruill, 372 F.3d 218, it has been held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA.

Williams v. Pennsylvania Dep't. of Corrections, 146 F. App'x 554, 557 (3d Cir. 2005). See Byrd v. Shannon, 715 F.3d 117, 127 (3d Cir. 2013). Here, it appears undisputed that Briley failed to name Dr. Rodgers, Mr. Miller, and Correct Care Solutions in his prison grievances. This failure, like Briley's failure to respond to the defense motion to dismiss, now has substantive significance for the plaintiff and compels dismissal of the claims pending against these defendants.

In sum, finding that all of the Poulis factors weigh in favor of dismissal of Dr. Rodgers, Mr. Miller, and Correct Care Solutions from this lawsuit, the defendants' motion to dismiss (Doc. 34), will be GRANTED.

An appropriate order follows.

Submitted this 26th day of March 2021.

<u>S/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge
